■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ISRAEL GONZALEZ, Appellant.— Judgment, Supreme Court, Bronx County, rendered on November 22, 1972, convicting defendant, upon his plea of guilty, of the crime of manslaughter in the second degree, and sentencing him to an indetermi-

nate term of imprisonment not to exceed five years, reversed on the law and in the exercise of discretion, sentence vacated and matter remanded to the sentencing court for resentencing only. At the time it sentenced this defendant, on November 22, 1972, the court had before it a probation department investigation report dated October 24, 1972 and a supplementary report dated November 21, 1972. A further supplementary report, dated November 29, 1972, which was after defendant had already been sentenced, brings into clearer focus the confusion inherent in this matter. That report, which, as far as this record indicates, was never seen or considered by the sentencing court, reveals the following: "As part of a continuing investigation of the defendant's social history, he was interviewed on Nov. 22, 1972, when he was produced by correction authorities for sentence. It was discovered at that interview that the previously recorded interview of the defendant on Oct. 5, 1972 was in error. Records of the Bronx House of Detention reveal that on that date there were two new men being held by the name of Israel Gonzalez. Evidently, the wrong inmate was interviewed by this Department. As the defendant was later transferred to Riker's Island, and subsequently not produced for interview. The error was not discovered prior to Nov. 22, 1972, at which time he was sentenced to State Prison for a term of up to five years." It appears, therefore, that, in preparing the report dated October 24, 1972, the probation department interviewed the wrong defendant, and that this defendant was not even interviewed in the course of preparing the supplementary report dated November 21, 1972. The probation department's initial error in interviewing the wrong party was called to the sentencing court's attention prior to the sentence and counsel indicated that such error was the reason why a second report had been requested. Counsel stated as follows: "Your Honor, I don't like to interrupt but they never interviewed him in the first report and he tells me they never even interviewed him on the second report but they did go to his family and employer. The facts indicated in the first report were never obtained from this defendant. That's why we requested a second report and a supplementary report and a reinvestigation." Even the supplementary report of November 21, 1972 raises more questions than it answers, in that it seems to compound the error originally committed. That report, as did the sentencing court itself, states that the "inaccurate and erroneous information contained in the original pre-sentence report was derived from *defendant's own false statements made at that time* [the time of the interview by the Probation Department leading to the original report]" (emphasis added). But it appears that this defendant was never interviewed prior to the date of sentencing. We cannot tell from the present minutes what facts the court was relying upon when it sentenced this defendant or to what extent it was influenced by the erroneous report of October 24, 1972. It would, however, appear that, in at least on one point, the court was influenced by that original report. In sentencing this defendant the court stated that it was taking "my information from the probation report * * * which does indicate that some of his difficulties stem from drinking". The court then read from that probation report and said as follows (sentence minutes): "let me read to you. 'While minimum information is available in regard to the defendant's background, he admits he had been drinking heavily for almost a year prior to this offense'". A review of the remarks made by the court in sentencing this defendant indicates that the court was reading from the erroneous report of October 24, 1972, which dealt with a different defendant. That report by the probation department was based upon an interview conducted with a defendant other than the one involved in this case. This record

presents a very confusing picture and the interests of justice require that the sentence be vacated and the case remanded to Mr. Justice Francis Bloustein only for the purpose of resentencing, after a proper probation investigation is made. Concur — Markewich, J. P., Tilzer and Cappozzoli, JJ.; Nunez and Murphy, JJ., dissent in the following memorandum by Murphy, J.: At sentence, when the court referred to various parts of the probation report and the supplementary report, it seemed, as defense counsel said, "they were interviewing the wrong man." Probation had in fact interviewed on both occasions an Israel Gonzalez, but not the defendant in this case. The error was not discovered until after the five-year sentence was imposed and a third report, dated a week after sentence, was submitted by the probation department reflecting the only interview with this defendant. No further steps were taken until the appeal was heard in this court. Defendant was involved in a racial brawl in a bar. He was chased into the street by several men, including an off-duty policeman. When they caught him the defendant pulled a knife, stabbed one man and wounded the officer. The officer belatedly identified himself and shot the defendant. The first man died. The defendant admitted his involvement and pleaded guilty to manslaughter in the second degree. The first probation report is replete with his "admissions" that he had been drinking heavily for almost a year prior to his offense; that he vacillates as to his guilt or innocence; that he cannot remember the events of that day. It is reported that the reason for his drinking was the death of his wife. It goes on to say that he is not sure of the whereabouts of his son, and even refers to an investigation for welfare fraud. In the supplemental report before sentence it is stated that "the inaccurate and erroneous information contained in the original pre-sentence report was derived from the defendant's own false statements made at the time." It is even reported that he gave four different dates of birth. However, it now correctly sets forth, if obliquely, the fact that he is "assertedly married", has three children, and they are living in Puerto Rico. The report concludes with the fact that he "acknowledged a period of excessive drinking" and that "his emotional instability is apparent in his homicidal behavior and, subsequently, in his deceptive prevarications in the course of the pre-sentence investigation." The foregoing conclusions were based, as indicated, on an interview with someone other than this defendant, and are not repeated in the only report which resulted after an interview with the defendant herein and after sentence. It appears that the defendant was 29 when arrested; had never any conflict with the law; was not violent by nature; had no drinking problem; was a good family man and a good worker. His employer, who did appear at sentence, told the court of his high opinion of the defendant's honesty and trustworthiness. The prosecutor stated, when the plea was entered, that the defendant's act was devoid of any intent to bring about anyone's death and that the provocative circumstances should be treated in mitigation of defendant's behavior. The third report states that the " * * * assertion that the altercation was racially motivated was substantiated by the police investigation." The original probation reports presented the erroneous picture of an irresponsible, unstable individual; and this obviously influenced the court's judgment. The improper findings have now been corrected in the final probation report. In light of all the objective facts in this case, we believe that the sentence was excessive. The mitigatory circumstances and the defendant's background do not justify further prison time. Neither society nor the defendant will benefit. To remand for more reports and further procedures in the trial court would only add more anguish to an already deplorable situation. The facts are now known and this court has the authority to act

and right the record. The defendant has already served about two years in prison since his arrest on March 18, 1972. We believe, under the circumstances, he has been sufficiently punished for the crime. We would accordingly modify the sentence to time served.